UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUBIA ELENA JAMMA,<br><br>         Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>         Defendant. | Case No.: 3:17-cv-1520-JLS (RNB)<br><br>**ORDER: (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND (2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>**(ECF Nos. 17, 18)** |

  Presently before the Court and ready for decision are the parties' cross-motions for summary judgment. (ECF Nos. 17, 18.) For the reasons set forth herein, Plaintiff's motion for summary judgment is **GRANTED** and the Commissioner's cross-motion for summary judgment is **DENIED.**

### PROCEDURAL BACKGROUND

  On July 26, 2017, Plaintiff Nubia Elena Jamma filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI"). (ECF No. 1.) On February 6, 2013, Plaintiff filed an application for SSI under Title XVI of the Social Security Act, alleging disability beginning January 1, 2013. (Certified

Administrative Record ["AR"] 184-91.) After her application was denied initially and upon reconsideration (AR 126-31, 135-40), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"). (AR 141-44.) An administrative hearing was held on July 7, 2015. Plaintiff appeared at the hearing with counsel, and testimony was taken from her, as well as telephonically from a medical expert ("ME") and a vocational expert ("VE"). (AR 50-74.)

As reflected in his December 9, 2015 hearing decision (AR 32-44), the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, since the date her application was filed. The ALJ's decision became the final decision of the Commissioner on May 26, 2017, when the Appeals Council denied Plaintiff's request for review. (AR 1-7.) This timely civil action followed.

## SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 11, 2013, the application date. (AR 37.)

At step two, the ALJ found that that Plaintiff had the following severe impairments: depressive disorder and cognitive disorder. (AR 37.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (AR 37.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to performing simple, repetitive tasks, low stress level work, and no work-related deadlines." (AR 40.)

For purposes of his step four determination, the ALJ found that Plaintiff's work experience as a companion satisfied the regulatory requirements to constitute past relevant work. The ALJ proceeded to accept the VE's testimony that a hypothetical

person with Plaintiff's vocational profile and RFC would be able to perform the requirements of Plaintiff's past relevant work as a companion as she performed it and as customarily performed. (AR 43-44.) Accordingly, the ALJ found that Plaintiff was not disabled at step four of the sequential evaluation process. (*Id.*)

## PLAINTIFF'S CLAIMS OF ERROR

As reflected in Plaintiff's summary judgment motion, Plaintiff is claiming the ALJ erred in the following respects:

1. The ALJ failed to include Plaintiff's social functioning limitation in his RFC assessment and hypothetical to the VE.

2. In determining that Plaintiff could perform her past relevant work as a companion, the ALJ failed to reconcile the apparent conflict between the VE's testimony and the reasoning level requirement of the companion job according to the Dictionary of Occupational Titles ("DOT").

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

///

///

3

17-cv-1520-JLS (RNB)

## ANALYSIS

### I. Residual Functional Capacity Assessment

As part of his determination at step three of the sequential evaluation process, the ALJ was required to consider whether the "paragraph B" criteria for the relevant listings were satisfied. The ALJ needed to determine whether Plaintiff's mental impairments resulted in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (*See* AR 38.) Based on the testimony of the medical experts of record, the ALJ found *inter alia* that Plaintiff had only moderate difficulties in social functioning. (*See* AR 39.) Plaintiff contends that the ALJ erred by not including this limitation in his RFC assessment, and that the omission of this limitation from the hypothetical to the VE was not harmless error because the occupation of companion requires significant interaction with people.

The Court finds that the ALJ did not err in failing to include the moderate limitation in social functioning in his RFC assessment or hypothetical to the VE. Social Security Ruling[1] ("SSR") 96-8p provides that "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." In *Rogers v. Commissioner of Social Security Administration,* 490 F. App'x 15, 17-18 (9th Cir. 2012), the Ninth Circuit addressed this very issue, concluding that the ALJ's RFC assessment adequately captured all of the claimant's limitations, despite the ALJ's finding of moderate difficulties in social functioning, because the claimant did not have significant limitations in any concrete work-related abilities that would prevent her from performing

---

[1] Social Security Rulings are binding on ALJs. *See Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

simple routine tasks involved in unskilled jobs. The *Rogers* court noted that moderate impairments assessed in broad functional areas used at steps 2 and 3 of the sequential process did not equate to concrete work-related limitations for purposes of determining a claimant's RFC. *Id.; see also Soto v. Colvin*, 2013 WL 3071263, at *2 (C.D. Cal. June 17, 2013) (ALJ not required to include the moderate limitations in activities of daily living and social functioning in the RFC assessment because they do not equate to concrete work-related limitations).

Further, the Court concurs with the Commissioner that this case is controlled by the Ninth Circuit's decision in *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008). There, two doctors assessed the claimant with moderate limitations in mental functioning. *See id.* at 1173. An examining physician (Dr. McCollum) found that the claimant was "moderately limited" in her ability "to perform at a consistent pace without an unreasonable number and length of rest periods" but did not assess whether she could perform unskilled work on a sustained basis. *Id.* A state-agency reviewing psychologist (Dr. Eather) identified the claimant's limitation in pace, as well as moderate limitations in several other areas of mental functioning but also found the claimant capable of carrying out "simple tasks." *Id.* Based on this medical opinion evidence, the ALJ assessed the claimant as having the RFC for simple, routine, repetitive work and he did not include any moderate limitations in pace or other mental areas of functioning in his hypothetical to the VE. *See id.* at 1171, 1173-74. In doing so, the ALJ did not reject the two doctors' findings of moderate limitations in pace and other areas of mental functioning. *Id.* at 1174. Rather, the ALJ "translated" the claimant's condition, "including the pace and mental limitations, into the only concrete restrictions available to him — [the state-agency reviewing psychologist's] recommended restriction to 'simple tasks.'" *Id.* The Ninth Circuit held that the ALJ's limitation to "simple, routine, repetitive" work sufficiently accommodated the medical-opinion evidence that the claimant had a "moderate" limitation in pace and "other mental limitations regarding attention, concentration, and adaption." *See id.* at 1173-74. Here, as in *Stubbs-Danielson*,

the ALJ "translated" Plaintiff's condition, including the moderate limitation in social functioning, into the only concrete restrictions available to him, *i.e.*, the ME's testimony at the evidentiary hearing that Plaintiff was limited to simple, repetitive tasks, and work involving low stress and no deadlines. (*See* AR 64.)

## II. Step Four Determination

The Court, however, is unable to affirm the ALJ's step four determination because the Court concurs with Plaintiff that the ALJ erred when he failed to reconcile the apparent conflict between the VE's testimony and the reasoning level requirement of the companion job.

In making disability determinations, the ALJ relies primarily on the DOT for "information about the requirements of work in the national economy." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). "The DOT describes the requirements for each listed occupation, including the necessary General Education Development ('GED') levels; that is, 'aspects of education (formal and informal) . . . required of the worker for satisfactory job performance.'" *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (quoting DOT, App. C, 1991 WL 688702 (4th ed. 1991)). "The GED levels [include] the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Id.* (citing DOT, App. C, 1991 WL 688702).

In addition to the DOT, the ALJ "uses testimony from vocational experts to obtain occupational evidence." *Massachi*, 486 F.3d at 1153; *see also Zavalin*, 778 F.3d at 846. Generally, the VE's testimony should be consistent with the DOT. *See* SSR 00-4p; *Massachi*, 486 F.3d at 1153. But when conflicts occur, neither the DOT nor the VE's evidence automatically trumps. *Massachi*, 486 F.3d at 1153. "Thus, the ALJ must first determine whether a conflict exists." *Id.*

"When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is

6

required to reconcile the inconsistency." *Zavalin*, 778 F.3d at 846 (citing *Massachi*, 486 F.3d at 1153-54). The ALJ must ask the VE whether his or her testimony conflicts with the DOT. *Massachi*, 486 F.3d at 1153-54. If it does conflict, "the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id.* at 1153.

Here, in response to a hypothetical that matched the ALJ's RFC assessment and Plaintiff's vocational profile, the VE initially stated that Plaintiff could not perform her past relevant work as a companion because it was semi-skilled work; but then after clarifying that Plaintiff was not limited to only one to two-step tasks, but rather to "simple, repetitive tasks," the VE testified that Plaintiff could "return to being a companion." (*See* AR 68.) The ALJ did not ask the VE if his testimony conflicted with the DOT.

According to the DOT, the companion occupation requires Level 3 Reasoning, which the DOT defines as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." *See* DOT 309.677-010, 1991 WL 672667. In *Zavalin*, 778 F.3d at 847, the Ninth Circuit held that there is an apparent conflict between a claimant's RFC to perform simple, repetitive tasks and the demands of Level 3 Reasoning. The Court notes that the *Zavalin* decision was published in February 2015, ten months before the ALJ issued his decision here.

In her cross-motion for summary judgment, the Commissioner does not address the apparent conflict between the VE's testimony and the reasoning level requirement of the companion job, or the ALJ's failure to ask the VE if his testimony conflicted with the DOT. Instead, the Commissioner argues that (a) the ALJ properly relied on the VE's testimony, and (b) Plaintiff waived this issue by failing to raise it with the VE at the administrative hearing. The former argument is belied by the authorities cited above, as well as others. *See e.g. Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (If the VE's opinion "conflicts with, or seems to conflict with, the requirements listed in the

7

[DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled"). The latter argument was expressly rejected by the Ninth Circuit in *Lamear v. Berryhill*, 865 F.3d 1201 (9th Cir. 2017), where the Commissioner likewise was arguing that the claimant's counsel should have asked the VE during cross-examination to reconcile the DOT with his conclusion and that counsel's failure required affirmance:

> "[O]ur law is clear that a counsel's failure does not relieve the ALJ of his express duty to reconcile apparent conflicts through questioning: 'When there is an apparent conflict between the vocational expert's testimony and the DOT—for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle—the ALJ is *required* to reconcile the inconsistency.' . . . That inquiry did not happen here, and so we must remand the case to permit the ALJ to follow up with the VE."

*Id.* at 1206-07 (footnote and internal citation omitted).

The Court is unable to affirm the ALJ's step four determination for another reason as well. In his decision, the ALJ stated, "the undersigned gives great weight to the opinions from the State agency medical consultants, which find that the claimant can perform simple tasks." (AR 42, citing AR 75-88, 89-107, and 109-22.) In fact, contrary to the ALJ's characterization, one of the State agency medical consultants (Dr. Cherry) opined that Plaintiff "would be unable to maintain a normal workday/workweek due to cognitive limitations" and was disabled (and thus not capable of performing any work let alone her past relevant work). (*See* AR 86-87.) The second State agency medical consultant (Dr. Funkenstein) expressly opined that Plaintiff did not have the RFC to perform her past relevant work due to her limitation to simple routine tasks. (*See* AR 105-06.) The third State agency medical consultant (Dr. Salib) did not believe Plaintiff's past work as a caregiver qualified as past relevant work. (*See* AR 120-21.) In any event, though, he opined that Plaintiff was limited to unskilled work because of her impairment (*see* AR 121), which ruled out the semi-skilled companion job that the ALJ found Plaintiff capable of returning to.

8

Thus, the ALJ's step four determination that Plaintiff was capable of returning to her past relevant work was contrary to the opinions of all three State agency medical consultants. Those opinions, if assessed and deemed credible by the ALJ, conceivably could have changed the ALJ's step four determination. It thus was incumbent on the ALJ to state explicitly his reasons for rejecting those State agency medical consultant opinions, rather than ignoring them. *See, e.g.*, *Gribben v. Colvin*, 2016 WL 5842188, at *2 (C.D. Cal. Oct. 4, 2016); *Boswell v. Colvin*, 2016 WL 806203, at *3-4 (C.D. Cal. Mar. 1, 2016); *see also* SSR 96-6p ("Findings . . . made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources," and ALJs "may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

## CONCLUSION

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court. *See, e.g., Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). Remand is warranted where additional administrative proceedings could remedy defects in the decision. *See, e.g., Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635. Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, *Kornock v. Harris*, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled, *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985).

Here, the Court has concluded that this is not an instance where no useful purpose would be served by further administrative proceedings. Rather, remand is warranted to permit the ALJ to reevaluate whether Plaintiff is capable of performing her past relevant

work as a companion and if not, to proceed to step five of the sequential evaluation process to determine whether Plaintiff can perform other work existing in significant numbers in the national economy.

For the foregoing reasons, Plaintiff's motion for summary judgment is **GRANTED**, the Commissioner's cross-motion for summary judgment is **DENIED**, and it is hereby **ORDERED** that Judgment be entered reversing the decision of the Commissioner and remanding this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated: September 21, 2018

Hon. Janis L. Sammartino
United States District Judge